UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


Raymond Morrissette and Construction    :
Project Managers, Ltd.    :
      Plaintiffs    :
    :
  v.    :
    :    CA No. 10-12L
Honeywell Building Solutions SES Corporation  :
and Honeywell International, Inc.    :
      Defendants    :


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. Introduction.

The Plaintiffs' amended complaint alleges four counts, including violation of the Age

Discrimination in Employment Act, 29 U.S.C Section 621 et seq, violation of the  Civil Rights

Act of 1990, RIGL section 42-112-1, breach of contract and promissory estoppel.   The

Plaintiffs' claims, arise out of the termination of a contract between the Defendants and the

Plaintiffs in which the Defendants agreed to hire the Plaintiffs to perform the work of a Safety

Officer (SSHO) for a project that was being performed by the Defendants at the Naval Station in

Newport, Rhode Island.   In this case, Plaintiff Raymond Mr. Morrissette, was 68 years old at the

time his services were terminated by Honeywell effective December 31, 2008, and thus is a

protected person under Age Discrimination in Employment Act, and under Rhode Island Civil

Rights Act of 1990 RIGL section 42-112-1 in the formation and making of a contract.

1

Construction Project Manager's LTD, is protected from discrimination based upon age in the making performance or enforcement of a contract under the  Civil Rights Act of 1990 RIGL section 42-112-1 based upon the age of its sole employee and principal, Mr. Morrissette.

Plaintiffs further alleges that the terms of their contract was breached in that the contract was to continue for the duration of the project.   Plaintiffs were without cause terminated well before the project was completed.    Plaintiffs also allege a claim of promissory estoppel in which they assert that they relied to their detriment upon the promises of the Defendants that the Plaintiffs would hold the position as project Safety Manager for the duration of the project.

**II.  Summary of facts**.

1.   In early November 2008 the Plaintiff Raymond Morrissette and Construction Project Managers, Ltd., were hired by the Defendants to serve as Safety Officer (SSHO) for a project that was being performed by Honeywell Building Solutions SES Corporation and Honeywell International, Inc. ( hereinafter collectively referred to as "Honeywell") at the Naval base in Newport Rhode Island.        Under the terms of the agreement the Plaintiffs were hired "for the duration of the project" and were to be paid by Honeywell in the amount of $2,000.00 per week for the first two months of the project, and $2,200.00 per week thereafter, plus expenses related to the project.  *Plaintiffs' Statement of Additional Facts paragraph 1.*

2.  Plaintiff Raymond Morrissette who was 68 years old at the time he was hired by the Defendants to be the SSHO for the Honeywell project.  *Plaintiffs' Statement of Additional Facts paragraph 2;*  Defendants' *Statement of Undisputed Facts paragraph 3.*

3.  Plaintiff Construction Project Managers, Ltd., is a corporation that is controlled by

2

Mr. Morrissette it sole employee and shareholder and he conducted his business in this case

through that corporation.     *Plaintiffs' Statement of Additional Facts paragraph 3.*

4.    At the time that the Plaintiffs were hired, Mr. Morrissette had over 30 years of

experience in Construction and Safety Management, and had recently worked for two years as a

Safety Officer on the Naval base in Newport Rhode Island for Mattie and O'Brien.   Prior to

commencing work for Honeywell, Raymond Morrissette provided a resume to Edward

Sienkiewicz, which was the same resume for which he qualified for the position of Safety Officer

at the Naval Station Newport two years earlier for Mattie and O'Brien.   In submitting this

resume the Plaintiff was not responding to a job notice and did not have notice of the specific

requirements for the job.  Edward Sienkiewicz of Honeywell, hired Mr. Morrissette and

determined that he was qualified for the position.  *Plaintiffs' Statement of Additional Facts*

*paragraph s 4 and 6.*

5.   The Plaintiffs qualifications met the requirements for the job under the Navy's

Unified Facilities Guide Specifications, (UFGS-01-35-26) because of the size, scope and value of

his prior construction and safety experience.    This is evidence by the wealth of experience of

Mr. Morrissette and the fact that he was subsequently hired and qualified  in June of 2010 to

serve as a Safety Officer (SSHO) at the Portsmouth Naval Shipyard in Kittery Maine, meeting

the level 4 requirements of Navy's Unified Facilities Guide Specifications, (UFGS-01-35-26) for

that job.     Raymond Morrissette, although he did not have formal training with Army Corps of

Engineers EM 385-1-1 regulation he had familiarity and has experience working with those

regulations these regulations between 2006-2008 for Mattie and O'Brien when he held the

position of Safety Officer for that company for a project at Naval Station Newport, and had

3

training in parallel OSHA regulations. *Plaintiffs' Statement of Additional Facts paragraph 5.*

6.  Shortly into the Plaintiffs' contract there were discussions between Mr. Edward Sienkiewicz and Mr. Marsh of Honeywell and Mr. Martin Kawa a Navy Safety compliance officer and Mr. Cournouyer[1] the contract facilitator from the Navy concerning the documentation submitted by the Plaintiffs concerning his qualifications for the job. According to Mr. Sienkiewicz at that meeting Mr. Kawa advised him that Mr. Morrissette was not eligible to hold the position of Safety Officer because he did not have sufficient EM 385-1-1 Army Corps of Engineers safety document experience, and he did not have sufficient demeanor to enforce safety regulations on that project as to the level the Navy expected. *Plaintiffs' Statement of Additional Facts paragraph 8.* Mr. Cournoyer testified after he reviewed the resumes that were submitted by Honeywell, and that after his review Mr. Morrissette was not approved as the SSHO officer on the project. Mr. Cournoyer testified that he told Mr. Sienkiewicz and Mr. Marsh that if Mr. Morrissette was to be qualified that he needed more information, and that no further information was provided. Notwithstanding, the stated insufficient of information as to Mr. Morrissette' qualifications and the stated reservations regarding his demeanor Mr. Cournoyer told Mr. Sienkiewicz and Mr. Marsh of Honeywell that he felt that Mr. Morrissette qualifications and abilities were sufficient enough that he could do an adequate job on the lighting phase of the project and that he could remain on the job through that phase of the project. The lighting phase of the project took "in the order of six months" to complete. Mr. Cournoyer at no point advised Mr. Sienkiewicz and Mr. Marsh that the Defendants had to terminate the Plaintiffs

---

[1]Mr. Cournoyer was the contract facilitator representing the Navy. *Sienkiewicz deposition page 24.*

4

contract.    He also considered input from Martin Kawa who indicated that Mr. Morrissette had difficulty working with people and in making his recommendation as to whether to approve the Plaintiffs as the SSHO officer. *Plaintiffs' Statement of Additional Facts paragraph 12.*

7.   Earlier in the month, Mr. Kawa, had put Sienkiewicz on notice that,"it would probably not be a good idea [to hire Mr. Morrissette] . . . that Mr. Morrissette did not work well with others."   Mr. Kawa also told Mr. Edward Sienkiewicz that he ought to think twice about hiring Mr. Morrissette.   Mr. Morrissette worked with Martin Kawa on the base at Naval Station Newport in the past. *Plaintiffs' Statement of Additional Facts paragraph 9.*   Mr. Kawa in the recent past has made negative statements to Mr. Morrissette regarding his age such as stating that Mr. Morrissette is  "a retiree" and "should be in rocking chair" and he demanded to know his age, appearing angry when he did not tell him his age. *Plaintiffs statement of additional facts at paragraph 10.*

8.   After being advised that the Navy needed more information about Plaintiffs' qualifications without detail as to what information[2] was needed, Raymond Morrissette submitted an additional resume to Honeywell with additional information regarding his qualifications to Edward Sienkiewicz, and asked for him a review and comment on the resume. Plaintiff Raymond Morrissette submitted a third resume to Edward Sienkiewicz on December 3, 2008.    According to Mr. Edward Sienkiewicz the supplemental resumes of Mr. Morrissette were not submitted by Honeywell to Raymond Cournoyer of the Navy for consideration of the

---

[2] For instance, Mr Sienkiewicz never told Mr. Morrissette that Mr. Kawa indicated that he did not meet the EM 385-1-1 Army Corps of Engineers requirement. *Sienkiewicz deposition pages 25.*

Plaintiffs qualifications for the Honeywell Safety Officer (SSHO) position.    According to Mr. Cournoyer of the Navy, he had received only the November 24, and December 3, supplemental resumes and did not review the initial resume.    Mr. Morrissette would have violated protocol if he provided his documentation directly to the Navy personnel.  *Plaintiffs' Statement of Additional Facts paragraphs 7 and 8.*

9.    Notwithstanding the suggestion of Mr. Cournoyer that Mr. Morrissette remain on the job for the initial lighting phase of the project, in early December 2008, Edward Sienkiewicz of Honeywell decided to terminate the Plaintiffs and their place hire a Mr. David Tallion who was 39 years old at the time, and whose credentials did not demonstrate that he met the standards to be approved as the SSHO officer because his resume failed to provide information as to the size scope and value of the projects that he previously on as required under the Navy's Unified Facilities Guide Specifications, UFGS-01-35-26, an whose documentation failed to demonstrate a experience and an understanding of Army Corps. of Engineers EM 385-1-1 regulation. Additionally, his credentials failed to demonstrate any  experience on government contracts. *Plaintiffs' Statement of Additional Facts paragraphs 13, 14 and 16.*

10.    Plaintiff Raymond Morrissette met with Mr. Sienkiewicz on Mr. Sienkiewicz' last day of work in December of 2008 before he left for his trip to Florida going out to dinner in Newport Rhode Island.    During this meal, Mr, Morrissette thanked Mr. Sienkiewicz for giving him the job at Honeywell.   Although Mr. Sienkiewicz had already decided to terminate the Mr, Morrissette  and hire younger a replacement, he failed to tell Mr. Morrissette at this dinner or at any time before or after he left for his trip to Florida that he was to be terminated and replaced by another worker.   *Plaintiffs' Statement of Additional Facts paragraph 15.*

6

11.    On December 15, 2008, while Edward Sienkiewicz was on vacation in Florida,

Plaintiff Raymond Morrissette was told by Charles Coats of Honeywell that "Edward

Sienkiewicz is in hot water due to the hiring freeze and hiring me."      On December 16th

Charles Coats told Mr. Morrissette that he just had a telephone conversation with Edward

Sienkiewicz and his boss Tom Bowen.    Mr. Coats told Mr. Morrissette that Honeywell would

terminate him effective December 31, 2008 due to its hiring freeze.  Mr. Morrissette  heard Mr.

Coats on the phone again with whom he believed was Mr.  Edward Sienkiewicz and said

"mission accomplished."   *Plaintiffs' Statement of Additional Facts paragraph 17.*

12.    Following hearing this news, Mr. Morrissette  contacted a lawyer and arranged for

correspondence alleging a breach of contract to be sent to be sent on December 22, 20008 to the

Mr.  Dave Jones of Honeywell.   *Plaintiffs' Statement of Additional Facts paragraph 18.*

13.    On December 29, 2008 Mr. Morrissette told Mr. Coats that he did not think a

verbal termination of my contract was valid.     Mr. Coats left, and came back within one hour

and told him that "since you won't leave voluntarily, there's something that we haven't  told you.

We received a verbal comment from the Navy that your not qualified to be Safety Manager of

this project and were trying to get the Navy to put it in writing."  *Plaintiffs' Statement of*

*Additional Facts paragraph 19.*

14.  On December 30, 2008 Mr. Coats told Mr. Morrissette that he did not actually speak

with Tom Bowen on December 30, 2008, but that rather all of his conversations were with

Edward Sienkiewicz and that he was taking direction from Edward Sienkiewicz.   *Plaintiffs'*

*Statement of Additional Facts paragraph 20.*

15.    The Defendants admit that the initial statement provided to Mr. Morrissette as a

7

reason for his termination, the hiring freeze was false.  *Plaintiffs' Statement of Additional Facts*

*paragraph 21.*   In March of 2009 following a request of the Defendants, and following the

institution of EEOC administrative proceedings to review the Plaintiffs' termination of the

contract at issue in this case, Raymond Cournoyer of the Navy advised Honeywell that he did not

approve Mr. Morrissette because his credentials and experience not meet the Unified Facilities

Guide Specifications, (UFGS-01-35-26).  *Plaintiffs' Statement of Additional Facts paragraph*

*22.*  Edward Sienkiewicz testified at his deposition in February of 2011 that Mr. Morrissette was

terminated because the Martin Kawa had determined that he lacked experience with Army Corps.

of Engineering  EM-385-1-1 regulation, and had a weak demeanor.    *Plaintiffs' Statement of*

*Additional Facts paragraph 22.*

15.   The decision to terminate the Plaintiffs was made by  Edward Sienkiewicz of

Honeywell.    Mr. Kawa and Mr. Cournoyer did not have the authority to terminate the Plaintiffs

contract.     According to Aaron Glazior who wrote the contract between Honeywell and the

Navy that is at issue in this case, the Navy cannot tell Honeywell whom to hire and cannot

discharge an employee, but can give approval of who Honeywell selects.   The Navy has safety

requirements, as written in the contract, which say that the Safety Officer has to make sure

employees are safe.  Honeywell has to make sure the Safety Officer meets contract specifications.

If not the Navy would tell Honeywell that Honeywell is  not meeting the requirements of the

contract and its up to Honeywell to fix the problem. . . . Honeywell could have trained the

employee, or provided additional documentation to show that the employee was qualified."

*Defendant's exhibit L attached to its memorandum of law in support of its motion for summary*

*judgment at  pages 6-7.*   The contract between the Navy and Honeywell only required that

8

Honeywell coordinate with the local safety and occupational health officers to determine the level of qualifications required of the site safety and health officer.   *Plaintiffs' Statement of Additional Facts paragraph 23.*

16.   There was no written documentation provided by the Navy to Honeywell as to the reasons that the Plaintiffs were not approved until an email correspondence was sent at the request of Honeywell from Raymond Cournoyer of the Navy in March of 2009.  *Sienkiewicz deposition page* 49-50.  *Plaintiffs' Statement of Additional Facts paragraph 24.*

### III. Argument:

In this case the Plaintiffs allege that they were terminated from the job of Safety Officer SSHO  by the Defendants Honeywell because the Raymond Morrissette' age older age of 68 years old at the time of the termination was a determining factor.   The Plaintiffs contend that this adverse action was in violation of the Age Discrimination in Employment Act, 29 U.S.C Section 621 et seq and the Rhode Island Civil Rights Act of 1990, RIGL section 42-112-1.

The Defendants' motion for summary judgment must be denied because there are material facts in dispute such that the Defendants are not entitled to judgment as a matter of law.  When considering a motion for summary judgment the Court must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Davila-Perez*, 202 F.3d at 466 (internal quotations and citations omitted). *See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).*   Summary judgment is appropriate only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 ( c ).   "A dispute is genuine if the evidence about

the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law."*Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F3rd. 46, 56 (1*st* Cir. 2000).    The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).* "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." *DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997), citing Celotex, 477 U.S. at 322-25.*    Summary Judgment should rarely be granted in the context of employment actions as such cases are inherently fact based.  *Hindman v. Transkirt Corp*., 145 F3rd 986 (8*th* Cir. 1998)

Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of " the ultimate question of discrimination *vel non.* " *U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714, 103 S.Ct. 1478,* 75 L.Ed.2d 403 (1983). As the Supreme Court has explained, " [t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, " [c]ourts must ... resist the temptation to become so entwined in the intricacies of the [ *McDonnell Douglas* ] proof scheme that they forget that the scheme exists solely to facilitate determination of ' the ultimate question of discrimination *vel non.* ' " *Proud v. Stone, 945 F.2d 796, 798 (4th Cir.1991*) (citation omitted).    The " elusive

factual question of intentional discrimination" is inevitably tough and rarely clear cut. *See Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981).

The Age Discrimination Act in employment applies to employee's over the age of 40 and prohibits discrimination in employment based upon age.    The Rhode Island Civil Rights Act of 1990 prohibits discrimination in the making, performance or termination of a contract based upon age.    To establish a prima facie case in an age discrimination case based upon a termination  a wrongful termination the Plaintiff must show :

"(1) that he was at least forty years of age; (2) his job performance met the employer's

legitimate expectations; (3) the employer subjected her to an adverse employment action

(*e.g.,* an actual or constructive discharge); and (4) the employer had a continuing need for

the services provided by the position from which the claimant was discharged." *Neri v.

Ross Simon, Inc.*, 897 A.2nd 42 (RI 2006) Citing  *Ramírez Rodríguez v. Boehringer

Ingelheim Pharmacueticals, Inc.,* 425 F.3d 67, 78 n.11 (1st Cir. 2005); *cf. Casey v. Town

of Portsmouth,* 861 A.2d 1032, 1037 (R.I. 2004) (reciting the prima facie case in a failure

to hire age discrimination analysis).

In this case, the Defendants allege that the Plaintiffs failed to meet prong two of the above set forth analysis inasmuch as the Plaintiffs performance failed to meet the legitimate expectations of the Defendant.  Specifically, the Defendants allege that the Plaintiffs failed to meet the legitimate expectations of the Defendant because the Plaintiffs failed to obtain a full approval from the Navy personnel for Raymond Morrissette to be the Safety Officer as required under the terms of the agreement that was entered into between the parties.    There is a legitimate dispute of material fact on this point.    Of course, Honeywell had to hire a qualified person to fill the

position of the SSHO officer, but there is a dispute of fact as to whether the particular person

hired had to be approved by Navy personnel.   What was required was under the Honeywell

contract with the Navy was that Honeywell coordinate with the local (Navy) safety and

occupational health officers to determine the level of qualifications required of the site safety and

health officer.   This contract terms requires coordination with the local officials to determine the

level of qualifications required, not whether a particular person met those qualifications.   Aaron

Glasior indicated that if the Navy felt that the person who was assigned the job of SSHO Officer it

would notify  Honeywell to make sure the Safety Officer meets contract specifications.  If not the

Navy would tell Honeywell that Honeywell is  not meeting the requirements of the contract and its

up to Honeywell to fix the problem. . . . Honeywell could have trained the employee, or provided

additional documentation to show that the employee was qualified."   *Defendant's exhibit L*

*attached to its memorandum of law in support of its motion for summary judgment at  pages 6-7*

*See statement of Aaron Glasior.*

Moreover, even if the Defendants were required to obtain approval from the Navy as to the

hiring of Mr. Morrissette, the Defendants failed to provide the complete documentation as to the

Plaintiffs qualifications to Mr. Cournoyer to review, and make a fully informed decision as to

whether Mr. Morrissette was in fact qualified for the position.     Raymond Cournoyer indicated

that more information was requested of Edward Sienkiewicz and Mr. Marsh in order to approve

the Plaintiff but that no further information was provided.

Plaintiff was not apprised that his job was in danger and was not advised as to the specific

information that the Navy was seeking to keep him on the job.   The Defendant never advised the

Plaintiff that he needed to provide documentation as to his Army Corps of Engineer EM-385

12

experience.   Had he been provided this notice he would have demonstrated that he met the required qualifications for the job, including the Army Corps of Engineer EM-385 experience, and Navy's Unified Facilities Guide Specifications, (UFGS-01-35-26) which were articulated shortcomings by the Navy for failing to approve Mr. Morrissette, as he did in June of 2010 in obtaining a SSHO job in Kittery Maine.

Moreover, there was no indication that the Plaintiff was not performing a good job in the short time that he was the SSHO officer.   Finally, it was the recommendation of Mr. Cournoyer that the Plaintiff remain on the job for the lighting phase of the project which took another six months to complete.

Also, there is a dispute of fact as to whether the agreement between Plaintiffs and the Defendants required the Navy personnel to approve Mr. Morrissette as the SSHO Officer.      Mr. Morrissette stated that he  was not advised by Edward Sienkiewicz or  Mr. Coats at the interview that his contract was subject to his being accepted or approved by the  the Navy.    Mr. Morrissette stated that the was not provided the written "scope of work" document that indicated as a condition that acceptance of documents and Raymond Morrissette by Navy contract representatives was not provided to him  until after he was terminated and working for the Defendants.   Even according to *Sienkiewicz* of Honeywell the scope of work order was an internal document and that he did not provide the document to Mr. Morrissette when he interviewed and hired him.      Morrissette also stated that he was not told by Edward Sienkiewicz or  Mr. Coats that his contract was subject to the Navy personnel approving or accepting him.

Wherefore there is a legitimate dispute fo fact as to whether the Plaintiffs performed according to the legitimate expectations of the Defendants.

The Defendants next contend that the Plaintiffs cannot demonstrate pre-text with respect to the Defendants' offered explanation for terminating the contract that it had with the Plaintiffs. The Defendants now offer as a reason for terminating the Plaintiffs contract was that the Navy failed to approve Mr. Morrissette to serve as Safety Officer.   The Plaintiffs can demonstrate that the reason now offered by the Defendants for terminating the Plaintiffs is a pretext for age discrimination.

Pretext can be shown by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a fact finder could infer that the employer did not act for the asserted non-discriminatory reasons." *Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F3rd. 46, 56 (1ˢᵗ Cir. 2000).*   It can also be shown by demonstrating the employers changing rational for making an adverse employment decision. *Thurman v. Yellow Freight Sys., Inc, 90 F3rd 1160, 1167 (6ᵗʰ Cir. 1996, opinion amended by 97 F3rd. 883 (6ᵗʰ Cir. 1996).*   The employer's articulation of different reasons for the adverse employment decision may undermine the credibility of all reasons provided. *E.E.O.C v. Pape Lft, Inc., 115 F.3rd 676 (9ᵗʰ Cir. 1997).*   If the employer constantly changes its reasons, the moving target strongly suggests pre-text.   Newhouse v. McCormick & Co., Inc. 110 F3rd 635 (8ᵗʰ Cir. 1997)   The fact finder can infer pre-text from an employer's shifting or inconsistent explanations for the challenged employment decision, *Applebaum v. Milwaukee Metropolitan Sewer Dist., 340 F3rd 573 (7ᵗʰ Cir. 2003);   Coleman v. Quaker Oats Co., 232 F.3rd 1271 (9ᵗʰ Cir. 1990)* (doubt cast on employer's proffered reasons as to why employee was laid off when straightforward reason was not provided to the employee but was later provided during litigation).  Pretext can also be shown by demonstrating that the employer continued to refuse to

hire the claimant after its justification was no longer applicable.  *Reeves, 530 US at 147-48*

(noting that once the employer's justification has been eliminated, discrimination may well be the

most likely explanation.).   Absence of documentation before an adverse employment decision is

reached may lead fact finder to doubt the later articulated grounds for the termination.  *Wilson v.*

*A.M. General Corp., 167 F3rd. 1114 (7ᵗʰ Cir. 1999).*   One of the most suspicious conduct of the

employer that can demonstrate pre-text is dissimilar treatment of the older worker from that

treatment provided the younger worker.   *Corneveaux v. CUNA Mut. Ins. Group, 76 F3rd 1498*

*(10ᵀʰ Cir. 1996).*   Ageist words and deeds may also be used to discredit an employer's articulated

reason for the adverse employment decision, and is probative of bias on the part of the employer.

*Huff v. BARCO, Inc. 122 F3rd 374 (7ᵗʰ Cir. 1997) Cross v. New York City Transit Authority, 417*

*F3rd 241 (2ⁿᵈ Cir 2005); See also. Reeves v. Sanderson Plumbing Products Inc. 530 U.S. 133*

*(2000).*

        In this case, the Defendants have offered several changing and varying reasons to the

Plaintiffs as to why it terminated the contract.   At the time Mr. Morrissette was initially notified

that the contract was being terminated on December 16, 2008 Mr. Charles Coats told Mr.

Morrissette that the contract was being terminated because that Honeywell would terminate him

effective December 31, 2008 due to its hiring freeze.   The Defendants later acknowledged that

this was not true, following a confrontation by Mr. Morrissette on December 29, 2008 as to his

doubts about the termination.   After this confrontation  Mr. Coats told Mr. Morrissette that "since

you won't leave voluntarily, there's something that we haven't  told you.  We received a verbal

comment from the Navy that your not qualified to be Safety Manager of this project and were

trying to get the Navy to put it in writing."    Then , in March of 2009, after administrative process

had began concerning the investigation of this termination and at the request of the Defendants, Mr. Cournoyer of the Navy indicated that he did not approve Mr. Morrissette because that his experience was insufficient to meet the requirements of Navy's Unified Facilities Guide Specifications, (UFGS-01-35-26).    Later, probably as a result of recognizing that it hired a younger worker, who had provided documentation that did not demonstrate compliance with the Navy's Unified Facilities Guide Specifications, (UFGS-01-35-26) including his experience with prior jobs including the size and value of the job, and failed to demonstrate and experience working on a government contract, Mr. Sienkiewicz at his deposition in 2011 stated that he terminated the Plaintiff because he failed to demonstrate experience with Army Corps of Engineers EM 385 regulation and that he received advise from the Navy including Martin Kawa and Raymond Cournoyer that Mr. Morrissette he did not have the demeanor for the job and did not work well with people.

Not only did these articulated reasons change over time, but they are implausible and not true.  In fact, Morrissette had the experience and credentials to satisfy the  Navy's Unified Facilities Guide Specifications, (UFGS-01-35-26) requirements, and did so by obtaining another job in Kittery Maine meeting level 4 of the Navy's Unified Facilities Guide Specifications, (UFGS-01-35-26).   Additionally, Mr. Morrissette has experience and worked with the Army Corps of Engineers EM 385 regulation in the two years prior to his termination a job at Naval station Newport with Mattie and O'Brien.  Moreover, the Defendants failed to provide all of the Plaintiffs documentation to the Navy so that it could approve the Plaintiff as the SSHO worker, and the Defendants failed to adequately advise the Plaintiff that his job was in jeopardy, but kept him and kept him in the dark about what was required by the Navy and what was said about Mr.

16

Kawa regarding his past performance.

There was disparate treatment between the Plaintiff and the younger worker who replaced the Plaintiff.   In fact, the Defendant hired a person David Tallion who was 39 years old at the time who submitted qualifications that showed no experience with Army Corps. Of Engineering EM 385-1-1 regulation.  It is also questionable as to whether Mr. Tallion demonstrated that he met the requirements of   Navy's Unified Facilities Guide Specifications, (UFGS-01-35-26) inasmuch as the resume he submitted contained no information about the size, scope and value of the jobs that he had worked on in the past, as the (UFGS-01-35-26) as these regulations require.

Additionally, the articulated reason for terminating the Plaintiff, that the he was not approved by the Navy was actually not effective at the time of the termination.  In fact, Mr. Cournoyer suggested that the Plaintiff was at least qualified and could remain on the project through the lighting phase, which took an approximate additional six months to complete.   So there was no need to terminate the Plaintiffs when the Defendants did.

 Although, there were no ageist statements that Mr. Morrissette heard from Honeywell staff, there is a nexus between the termination of the Plaintiff and the ageist views of Mr. Martin Kawa such that these can be impugned to the Defendant.     The courts must be "be cautious about attributing to any ultimate decision makers. . . . the most unfortunate expressions and beliefs of those around him and those who worked in his employ. *See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 291 (4th Cir.2004) (en banc).*     It is regrettable that any distasteful comments will arise in the workplace, but that cannot mean that the actual decision maker is impugned thereby.    It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or

17

isolated remarks is substantially reduced."   *Merritt v. Old Dominion Freight Line, Inc., 601*

*F.3rd 289 (4th Cir. 2010)* citing *McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686-87 (7th

Cir.1991).   In *Lettieri v. Equant, Inc.,* 478 F.3d 640, 649 (4th Cir.2007), the plaintiff had put

forward the kind of " ' evidence that clearly indicates a discriminatory attitude at the workplace

and ... illustrate[s] a nexus between that negative attitude and the employment action.' " *Id.*

(quoting *Brinkley v. Harbour Rec. Club,* 180 F.3d 598, 608 (4th Cir.1999)).   *In Merritt v. Old*

*Dominion Freight Line, Inc., 601 F.3rd 289 (4th Cir. 2010)* the Court deemed the plaintiff's "

powerful evidence showing a discriminatory attitude at [her company of employment] toward

female managers" sufficient to " allow a trier of fact to conclude that these discriminatory

attitudes led to [plaintiff's] ultimate termination."

       In this case, the Plaintiffs have put forth evidence of the ageist views of Martin Kawa and

his involvement in the decision making process, such that his views should be impugned to Mr.

 *Sienkiewicz* the decision maker.  Mr. Kawa in the recent past has made negative statements to Mr.

Morrissette regarding his age such as stating that Mr. Morrissette is  "a retiree" and "should be in

rocking chair" and he demanded to know his age, appearing angry when he did not tell him his

age.   The ultimate decision maker  Edward  testified that he was informed when he hired the

Plaintiff that there would be trouble.    He also said that he relied upon the recommendations of

Mr. Kawa in making his decision to terminate the Plaintiffs.   The fact that Mr. *Sienkiewicz* was

communicating and taking recommendations from Mr. Kawa, taken together with the facts that

demonstrate that the Plaintiff was not put on notice that his job was in danger, was not notified of

the particular documentation that the Navy was looking for to obtain final approval of the

Plaintiffs as the SSHO, the fact that the Plaintiff was initially lied to about the reason for his

18

termination, the fact that he was treated differently with respect to the requirement that he demonstrate knowledge with the Army Corps. Of Engineering EM 385 1-1 regulation, than the younger worker that replaced the Plaintiffs, and the fact that Raymond Cournoyer never advised the Defendants to terminate the Plaintiffs but in fact sought a compromise wherein the Plaintiffs would remain on the project for the initial lighting phase of the project which lasted an approximate additional six months demonstrate a nexus between the animus of Mr. Kawa towards Mr. Morrissette's age sufficient to " allow a trier of fact to conclude that these discriminatory attitudes led to the Plaintiffs ultimate termination.

Next,  the Defendants argue that the same actor inference should be applied to make a determination that there was no discrimination based upon Mr. Morrissette's age because the Plaintiffs were hired and then terminated by same person, Mr. *Sienkiewicz*.   Neighboring circuits have held in varying degrees that in cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.   These courts reserve, however, that there could be egregious facts from which a discharge in this context could still be proven to have been discriminatory.   *Proud v. Stone, 945 F.2d 796 (4th Cir. 1991).*   Plaintiffs contend that this Court should not adopt the same actor inference at the summary judgment stage because it is an inference against the non moving party.    However, even if the court were to adopt the same actor inference, the conduct of Mr. Sienkiewicz in this case is particularly egregious such that the inference should not apply.  Here, Sienkiewicz arguably arranged for Mr. Morrissette to be told a straight up lie that he was being terminated because of a hiring freeze; he kept Mr. Morrissette in the dark concerning the Navy's

articulated reservations, failing to follow the suggesting on Mr. Cournoyer's that he remain on for the lighting phase, but rather followed the advise of Mr. Kawa, who had an animus against Mr. Morrissette's age, and the holding of Mr. Tallion to lower standards in terms of satisfying the requirements of Army Corps. Of Engineering EM 385 1-1 regulation, and Navy's Unified Facilities Guide Specifications, (UFGS-01-35-26).

Wherefore, the Plaintiffs pray that the Defendants motion for summary judgment be denied with respect to their Age Discrimination in Employment Act, 29 U.S.C Section 621 et seq, and violation of the Civil Rights Act of 1990, RIGL section 42-112-1 claims.

Plaintiffs further contend that there are disputed facts as to the terms of the contract entered into between the parties.   The Defendants now claim that the adhesion document that was submitted by the Plaintiffs on December 6, 2008 to be paid was the contract.  This is contrary to Mr. Morrissette's testimony as to the contract terms and *Mr. Sienkiewicz* testimony of the contract terms.

Finally, regarding the Plaintiffs' promissory estoppel claim it is undisputed that the Mr. Morrissette failed to pursue opportunities at Brayton Point as a consequence of relying upon the promises of  *Mr. Sienkiewicz* that he would be the SSHO officer on the Honeywell project. Honeywell failed to live up to this promise.  Consequently, the Plaintiff Raymond Morrissette has a viable promissory estoppel claim.

Wherefore, the Plaintiffs pray that the Defendants motion for summary judgment be denied.

Plaintiffs
By their Attorney,

20

/s/ Joseph F. Hook
_____

Joseph Hook
RI Bar No. 5418
294 Valley Road
Middletown, Rhode Island 02842
Tel:     (401) 619-5940
Fax:     (401) 848-0984
Email: joe@josephhooklaw.com


<u>CERTIFICATE OF SERVICE</u>

I the undersigned certify that I served a copy of the within memorandum of law  upon counsel for the Defendants, Neil McNamara Esq., and Jillian Folger Hartwell by way fo the Court's Electronic Filing System on this 12th day of May 2011.


/s/ Joseph F. Hook
_____

21