UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RAYMOND MORRISSETTE and
CONSTRUCTION PROJECT
MANAGERS, LTD.

    Plaintiffs,

v.                                                  C.A. No. 10-12-ML

HONEYWELL BUILDING SOLUTIONS
SES CORPORATION, and HONEYWELL
INTERNATIONAL INC.

    Defendants.

## MEMORANDUM AND ORDER

Plaintiffs filed a complaint against Defendants on December 16, 2009, in the Superior Court of Rhode Island, Newport County. Pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441, Defendants removed the case to federal court on January 12, 2010. After conducting discovery, Defendants moved for summary judgment as to all claims in Plaintiffs' amended complaint. On June 22, 2011, the Court heard argument on Defendants' motion and, at that time, granted summary judgment on the breach of contract and promissory estoppel claims. On July 1, 2011, Plaintiffs voluntarily withdrew their Age Discrimination in Employment Act claim. 29 U.S.C. § 621 (2006). For the reasons set forth below, the Court now grants Defendants' motion as to Plaintiffs' remaining claim, which alleges age discrimination in violation of the Rhode Island Civil Rights Act of 1990 ("RICRA"). R.I. Gen. Laws § 42-112-1.

# I. Facts

Defendants, Honeywell Building Solutions SES Corporation and Honeywell International, Inc. (collectively "Honeywell") were hired by the Navy to work as a contractor on a construction project at the United States Navy Base in Newport, Rhode Island. Honeywell's contract with the Navy required it to hire a Site Safety Health Officer ("Safety Officer"). In October 2008, Plaintiffs, Raymond Morrissette and Construction Project Managers, Ltd.[1] (collectively "Morrissette") submitted an application to Honeywell for the Safety Officer position. Edward Sienkiewicz ("Sienkiewicz"), Honeywell's on-site project manager, interviewed Morrissette in November 2008. Sienkiweicz ultimately decided to hire Morrissette for the Navy job, and on December 6, 2008, Morrissette and Honeywell entered into a Purchase Order Subcontract Agreement in which Morrissette agreed to work as Honeywell's Safety Officer on the Navy project. Morrissette was 68 years old at the time of contract formation. It is undisputed that, pursuant to the agreement, Morrissette was an independent contractor for Honeywell.

It soon became evident to Honeywell that Navy personnel did not think that Morrissette was a good fit as Safety Officer. The first stirrings of disapproval were voiced by Martin Kawa ("Kawa"). At the time that Morrissette was hired, Kawa was working on the Navy project as the Navy's safety manager. Kawa had previously worked with Morrissette on a different project. After learning that Honeywell had hired Morrissette as its Safety Officer, Kawa informed Sienkiewicz that "Morrissette did not work well with people." Def.'s Statement Undisputed Facts ¶ 9, Docket No. 18. Kawa also

---

[1] Morrissette, a Rhode Island citizen, is the sole shareholder and employee of Construction Project Managers, Ltd., a Rhode Island corporation.

told Sienkiewicz that he ought to "think twice" about hiring Morrissette. See Sienkiewicz Dep. 20:19-21. In early November, Sienkiewicz wrote an email to Dave Jones, a manager at Honeywell, in which he stated that he was taking Kawa's comments "more or less as a warning." Sienkiewicz Email, Docket No. 18-8.

Morrissette had had a sour experience with Kawa on the prior job. On that job, Kawa allegedly made age-related discriminatory remarks. For example, Kawa told Morrissette that he "should be home in rocking chair" and that he "should be retired," referring to him as a "retiree." Morrissette Dep. 52:9-15, Docket No.18-3. The frequency with which the comments were made is unclear, but Morrissette alleges that Kawa made the disparaging remarks "from time to time." Id. It is those age-based comments on the previous job that form the basis for Morrissette's present age-related discrimination claim against Honeywell. Morrissette concedes that no Honeywell personnel ever made disparaging age-related comments, id. at 51:5-21, and he likewise admits that no Navy personnel made any such comments on the current job while he was working for Honeywell. Id. at 51:22-52:5.

Kawa's reservations regarding Morrissette eventually reached Raymond Cournoyer ("Cournoyer"), the Navy's project manager for the project. According to Cournoyer, he had reviewed Morrissette's resume but Honeywell had hired Morrissette before he had expressed any opinion to Honeywell as to whether or not Morrissette was qualified for the position. See Cournoyer Dep. 8-9, Docket No. 18-1. Honeywell maintains that, under its contract with the Navy, "approval" by the Navy was required in order to fill the Safety Officer position. Morrissette acknowledges that, with regard to the contract between Honeywell and the Navy, "Honeywell has to make sure the Safety Officer meet[s] contract specifications." Pl.'s Statement Disputed Facts ¶ 2, Docket No. 22.

3

Ultimately, Cournoyer spoke directly with Sienkiewicz and said that he was concerned with Morrissette's "weak demeanor in enforcing safety rules with subcontractors." Def.'s Mot. Summ. J. 4, Docket No. 17-1. Kawa was present at one or more such conversations and he expressed the view that Morrissette had insufficient EM 385-1-1 Army Corps of Engineers safety document experience. Sienkiewicz Dep. 25:3-11. In addition, a March 3, 2009, email from Cournoyer to Eric Marsh ("Marsh"), the Honeywell project manager for the Navy project, memorializes the Navy's view as to Morrissette's qualifications, stating that "[i]t was the Navy's determination that Mr. Morrissette's credentials and experience did not meet the personnel qualification requirements of the Unified Facilities Guide Specification (UFGS) 01 35 26 GOVERNMENTAL SAFETY REQUIREMENTS for a project of this size and complexity." Cournoyer Email, Docket No.18-10.

Honeywell maintains that Sienkiewicz understood the Navy's lack of "approval" to mean that Morrissette was ineligible for the position of Safety Officer. Sienkiewicz felt that, due to the lack of Navy approval, he "had no other alternative" than to terminate Morrissette's contract. Siekiewicz Dep. 42:11-22, Docket No. 18-2. In December, Sienkiewicz began looking for a replacement for Morrissette. Cournoyer's communications with Sienkiewicz had included a discussion as to the possibility of Morrissette staying on as Honeywell's Safety Officer for the duration of the lighting phase of the Navy project, a less complicated phase of the overall job, which was estimated to take up to six months. Cournoyer Dep. 20:2-5. Morrissette alleges that, during this time, Cournoyer requested additional information regarding Morrissette's level of experience and that he provided additional resume information to Sienkiewicz but that Sienkiewicz did not pass that information to Cournoyer. The contents of the resumes and the manner in which they related, if at all, to Cournoyer's concerns regarding Morrissette's qualifications is unclear. Ultimately, Sienkiewicz

decided against keeping Morrissette on for the lighting phase. He terminated Morrissette's contract on December 31, 2008. David Taillon, a 39 year-old man, replaced Morrissette as Honeywell's Safety Officer.

Honeywell was initially untruthful in communicating to Morrissette its rationale for terminating his contract. Charles Coats ("Coats"), a Honeywell construction manager, first informed Morrissette that he was being taken off the Navy job because of a hiring freeze. Morrissette was skeptical and Coats, when pressed, told Morrissette that he was being let off the project because the Navy did not approve of him. After his termination, Morrissette filed a claim in Rhode Island Superior Court alleging, among other things, age-based discrimination in violation of Rhode Island law.

## II. Standard of Review

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the moving party's initial burden to demonstrate the absence of any genuine issue of material fact. See Kuperman v. Wrenn, 2011 WL 2714101, at *2 (1st Cir. July 14, 2011) (citing Rivera-Colón v. Mills, 635 F.3d 9, 12 (1st Cir. 2011)). "[T]he opposing party can then defeat the motion by showing that there is a genuine issue of material fact." Rivera-Colón, 635 F.3d at 12. "On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). All reasonable inferences are drawn in favor of the non-moving party. See Cortes-Rivera v. Dept. of Corr. and Rehab. of P.R., 626 F.3d 21, 26 (1st Cir. 2010).

## III. Analysis

"The ultimate question in a . . . RICRA action[] is 'discrimination *vel non*.'" Casey v. Town of Portsmouth, 861 A.2d 1032, 1037-38 (R.I. 2004) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 518 (1993)). On a motion for summary judgment, the RICRA analysis proceeds under the McDonnell Douglas burden-shifting paradigm. See Casey, 861 A.2d at 1036 (citing Newport Shipyard, Inc. v. R.I. Comm'n for Human Rights, 484 A.2d 893, 898 (R.I. 1984)). In this analysis, the plaintiff must first make a prima facie showing of age discrimination. See Velazquez-Fernandez v. NCE Foods, Inc., 476 F.3d 6, 11 (1st Cir. 2007). Where that showing is made, the burden then shifts to the defendant to produce evidence setting forth a legitimate, non-discriminatory reason for termination. Id. If the defendant makes such a showing, the ultimate burden of proof rests upon the plaintiff to show by a preponderance of the evidence that the defendant's rationale for the termination is a pretext for age-based discrimination. Id.

### A. Prima Facie Case

The Rhode Island Civil Rights Act of 1990 provides that "[a]ll persons within the state, regardless of . . . age[2] . . . have . . . the same rights to make and enforce contracts." R.I. Gen. Laws 42-112-1(a). "[T]he right to make and enforce contracts . . . includes the making, performance, modification and termination of contracts and rights concerning real or personal property, and the

---

[2] The term "age" refers to persons forty years of age or older. See R.I. Gen. Laws § 42-112-1(d) (referring to the definition of "age" in R.I. Gen. Laws § 28-5-6(1)).

enjoyment of all benefits, terms, and conditions of the contractual and other relationships." Id. § 42-112-1(b).[3]

The first step in the McDonnell Douglas inquiry requires that Morrissette make a prima facie showing of age discrimination by demonstrating that:

> (1) []he was at least forty years of age; (2) h[is] job performance met the employer's legitimate expectations; (3) the employer subjected h[im] to an adverse employment action . . . ; and (4) the employer had a continuing need for the services provided by the position from which the claimant was discharged.

Neri v. Ross-Simons, Inc., 897 A.2d 42, 49 (R.I. 2006) (quoting Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 78 n.11 (1st Cir. 2005)). The only element of the prima facie showing that is in contention is whether Morrissette met Honeywell's legitimate expectations.

At the prima facie stage, the parties dispute whether Navy "approval" of Morrissette was a legitimate job expectation. Honeywell argues that Navy "approval" was an essential element of Morrissette's employment. This is, however, effectively the same argument that Honeywell puts forth in the second step of the McDonnell Douglas analysis, in which it argues that its non-discriminatory justification for terminating Morrissette was the lack of Navy "approval." Given this

---

[3] Given the statute's broad language, its protections apply to Morrissette even though he is an independent contractor and not an employee. RICRA has been described as providing "broad protection against all forms of discrimination in all phases of employment." Ward v. City of Pawtucket Police Dept., 639 A.2d 1379, 1381 (R.I. 1994). There are no Rhode Island cases limiting application of the statute to employees as opposed to independent contractors. Further, in interpreting 42 U.S.C. § 1981, the federal analog to the state statute, see Moran v. GTech Corp., 989 F.Supp. 84, 91 (D.R.I. 1997), the federal statute has been held to apply to independent contractors since it does not limit itself to employment contracts. See PowerComm, LLC v. Holyoke Gas & Elec. Dept., 746 F.Supp.2d 325, 331 n.9 (D.Mass 2010) (quoting Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 14 (1st Cir. 1999)).

overlap, at the prima facie stage, it would be improper for the Court to consider Honeywell's alleged non-discriminatory reason for taking the adverse employment action. See Melendez v. Autogermana, Inc., 622 F.3d 46, 51 (1st Cir. 2010). To do so would bypass the proper burden-shifting analysis and would deprive the "plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext." Id. The Court assumes for the purposes of deciding this motion that Morrissette has made a prima facie showing of age discrimination. The Court next proceeds to review the RICRA claim under the latter stages of the McDonnell Douglass burden-shifting analysis.

**B. Pretext Analysis**

<u>i. Honeywell's Discriminatory Animus</u>

Under the second step in the burden-shifting analysis, it is Honeywell's burden to articulate a neutral basis for the termination. See Drumm v. CVS Pharmacy Inc., 701 F.Supp.2d 200, 208 (D.R.I. 2010). Honeywell alleges two non-discriminatory rationales for terminating Morrissette. Sienkiewicz characterized his discussions with the Navy as highlighting: 1) Morrissette's insufficient qualifications under guideline EM 385-1-1; and 2) Morrissette's ineffective "demeanor" in enforcing safety regulations. Siekiewicz Dep. 25:3-11, Docket No. 18-2. Honeywell further contends that its agreement with the Navy required that, with regard to the Safety Officer, "[t]he person who filled that position had to be *approved* by the Navy." Def.'s Statement Undisputed Facts ¶ 2 (emphasis added); see also Marsh Aff. ¶ 5, Docket No. 18-9; Sienkiewicz Dep. 42:11-22. Honeywell essentially contends that Morrissette's contract was terminated because the Navy did not "approve" of either his qualifications or his ability to enforce safety regulations. Honeywell's evidence on this point is

sufficient to meet its burden of production. The burden thus shifts back to Morrissette to demonstrate that Honeywell's asserted reasons for the termination are a pretext for discrimination.

"Proof of discrimination does not require evidence of the 'smoking-gun' variety." Casey, 861 A.2d at 1038. On summary judgment, a plaintiff must show facts that would permit a reasonable fact-finder to infer intentional discrimination. See id. Morrissette must "put forth sufficient facts for a reasonable fact-finder to conclude that . . . [Honeywell's] proffered reason for discharging him is a pretext and that the true reason behind the firing was discriminatory animus." Melendez, 622 F.3d at 52 (discussing the pretext element of the McDonnell Douglas burden-shifting analysis in an ADEA context).

Morrissette has failed to provide sufficient evidence that would permit a reasonable fact-finder to infer that Honeywell acted with the requisite discriminatory motive. Morrissette's subcontract agreement with Honeywell states that "Honeywell may terminate this subcontract *without cause* prior to completion." Purchase Order Agr. ¶ 25, Docket No. 18-7 (emphasis added). Pursuant to that right, Honeywell terminated Morrissette's contract when the Navy made clear that it did not "approve" of him. The record further establishes that such Navy "approval" was a requirement of the contractual relationship between Honeywell and the Navy. See Sienkiewicz Dep. 36:1-37:1; Cournoyer Dep. 20:2-13; Marsh Aff. ¶¶ 4-5. As to that "approval," it was Cournoyer, a Navy employee, who informed Honeywell that "Mr. Morrissette was not approved to be the . . . [Safety Officer] on the project." Cournoyer Dep. 20:2-11.

Morrissette's evidence in support of his pretext argument reduces itself to his subjective view that underlying Honeywell's legitimate explanations was age-related bias. In the end, however, "personal opinion, unsupported by fact, is not sufficiently probative on the issue of pretext." Torrech-

Hernandez v. General Elec. Co., 519 F.3d 41, 53-54 (1st Cir. 2008). In this case, the record establishes that Siekiewicz was concerned that Morrissette "does not work well with people," Sienkiewicz Email, Docket No. 18-8, and that his "demeanor" was not suited to the job. These concerns stemmed from conversations with the Navy and these facts do not lead to an inference of discriminatory animus on the part of Honeywell.

Morrissette argues that discriminatory intent can be inferred because the Navy allegedly requested further documentation regarding Morrissette's qualifications and Honeywell neither provided that information to the Navy nor told Morrissette that his job was in jeopardy.[4] The record reveals, however, that Cournoyer's lack of "approval" was premised on his review of two resumes, Cournoyer Dep. 18:10-19:2, and upon his discussions with Navy employees who had had experience with Morrissette's "performance and effectiveness" as a Safety Officer. Cournoyer Dep. 23:16-24:4. This information was then communicated to Sienkiewicz who terminated Morrissette "based on information given to" him. Sienkiewicz Dep. 41:11-22. Honeywell's decision to terminate the contract was ultimately based on the Navy's assessment of Morrissette's qualifications and demeanor.

Morrissette additionally argues that an inference of discriminatory intent may be drawn from Honeywell's initial lack of candor regarding the reason for his termination. Pretext can be established by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000) (quoting Hodgens v. General Dynamics Corp., 144 F.3d 151, 168 (1st Cir.

---

[4] Morrissette does not say precisely what "additional information" he provided to Honeywell – nor does he articulate how that additional information would have addressed the deficiencies in his experience noted by the Navy. He says only that he had additional "safety documentation" that he alleges would have been relevant. Morrissette Dep. 99.

10

1998)). In some cases, an employer's shifting rationale for termination could be evidence of pretext. See Thurman v. Yellow Freight Systems, Inc., 90 F.3d 1160, 1167 (6th Cir. 1996). In this case, Honeywell first told Morrissette that he was being terminated due to a hiring freeze. When Morrissette questioned that rationale, Honeywell informed him that his contract was being terminated due to his lack of qualifications. While Honeywell's shifting rationale does bear some scrutiny, nothing in the record suggests an attempt to disguise age-related discrimination. Honeywell's actions may have been misguided but they do not "cast meaningful doubt on the proffered reason" for the termination. Neri, 897 A.2d at 51. This is especially true here because Honeywell is entitled to the "same actor" inference. "In cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993) (quoting Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991)). In this case, Sienkiewicz both hired and fired Morrissette, with just a few weeks passing between those events. Sienkiewicz himself was 63 years old when Morrissette was fired. The short span of time between the hiring and the firing and Sienkiewicz's own age at the time of those events further counsels against any inference that Morrissette's termination was based on age-related bias.

### ii. Morrissette's Theory of Subordinate Liability

Honeywell is the named defendant in this case but Morrissette's claim of age discrimination begins, and ends, with comments allegedly made by Kawa, a Navy employee. Morrissette attempts to connect Kawa to Honeywell by arguing that Sienkieweicz was "influenced by Martin Kawa, and my

11

age became a reason to terminate me." Morrissette Aff. ¶ 8, Docket No. 33. The bias of an employee who "influences" an employment action may be probative in a burden-shifting analysis in an employment discrimination case. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990) (discussing pretext in an ADEA case). Morrissette suggests that "[a]lthough, there were no ageist statements that Mr. Morrissette heard from Honeywell staff, there is a nexus between the termination of the Plaintiff and the ageist views of Mr. Martin Kawa such that these can be impugned [sic] to the Defendant." Pl.'s Obj. 17, Docket No. 21-1. In this case, the record shows that Sienkiewicz did take into consideration Kawa's opinion regarding Morrissette's lack of qualifications. See Sienkiewicz Email, Docket No. 18-8 (taking Kawa's comments as a "warning").

Discriminatory comments made by "those in a position to influence the decisionmaker" may support a pretext argument. See Santiago-Ramos, 217 F.3d at 55 (finding, in a Title VII context, that the evidence was sufficient to support an inference that the employee making the discriminatory comments was in a position to influence the key decisionmaker). Here, Morrissette argues that Kawa made agesist comments on the previous job. Morrissette alleges that, on that prior job, "from time to time" Kawa said he "should be retired" and that he "should be home in a rocking chair." Morrissette Dep. 52:1-15. Morrissette concedes, however, that there were "no [ageist] comments from anybody in the Navy during that six-week period when I was with Honeywell." Morrissette Dep. 52:1-5. Further, the record establishes that Honeywell personnel never made any ageist statements to Morrissette, see Pl.'s Obj. 17, and there is no indication that Kawa's ageist remarks were ever communicated to Honeywell personnel. Nevertheless, Morrissette now seeks to hold Honeywell liable for age discrimination on the theory that Kawa, a non-employee, harbored ageist animus and was in a position to influence Siekiewicz, the Honeywell decisionmaker.

12

Corporate liability may attach when a subordinate conceals information or provides false information to a decisionmaking employee based on the subordinate's age-related bias. See Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 86-87 (1st Cir. 2008) (reviewing corporate liability for the discriminatory animus of a subordinate under a Massachusetts statute prohibiting age discrimination). Morrissette's claim essentially hinges upon a "cat's paw" theory of liability or the "rubber stamp" theory of liability. The "cat's paw" theory of subordinate liability has been recognized in cases where a "biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 484 (10th Cir. 2006) (discussing employer liability for a subordinate's animus in a Title VII context) (citing Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1249 (11th Cir. 1998)). A similar theory of liability, the "rubber stamp" theory, involves situations "in which a decisionmaker gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate." EEOC, 450 F.3d at 484; see also Shoucair v. Brown Univ., 917 A.2d 418 (R.I. 2007) (applying the "rubber stamp" theory of liability in an employment discrimination case under the Fair Employment Practices Act).

"The Rhode Island Civil Rights Act provides broad protection against all forms of discrimination in all phases of employment." Ward v. City of Pawtucket Police Dept., 639 A.2d 1379, 1381 (R.I. 1994). In light of the scope of the statute and the Rhode Island Supreme Court's contemplation of the "rubber stamp" theory of liability in a FEPA context, see Shoucair, 917 A.2d at 430, the Court assumes that, under RICRA, as in other employment discrimination contexts, employers may be held vicariously liable for the animus of subordinates, even where the employer acts with no such unlawful animus. See Diaz v. Tyson Fresh Meats, Inc., 2011 WL 2535531 (8th Cir.

13

June 28, 2011) (applying the "cat's paw" theory under the Iowa Civil Rights Act with regard to a disability-based retaliation claim); Cafasso, U.S. ex rel. v. General Dynamics C4 Sys. Inc., 637 F.3d 1047 (9th Cir. 2011) (discussing the "cat's paw" in the context of a False Claims Act case); Schandelmeier-Bartels v. Chicago Park Dist., 634 F.3d 372 (7th Cir. 2011) (applying the "cat's paw" in a Title VII race discrimination case); Thompson v. Memorial Hosp. of Carbondale, 625 F.3d 394 (7th Cir. 2010) (reviewing the "cat's paw" theory of liability in a Title VII and § 1981 context); Cobbins v. Tenn. Dept. of Transp., 566 F.3d 582, 587 n.5 (6th Cir. 2009) (noting the applicability of both the "cat's paw" and "rubber stamp" theories of subordinate liability in a Title VII employment discrimination context). Generally, the "cat's paw" theory of liability calls into question the degree of the subordinate's influence and the scope of the decisionmaker's independent review.[5] Before proceeding to that analysis, however, the Court takes stock of the fact that the discriminatory "subordinate" in this case is not an employee of Honeywell, the entity named in this suit and the entity that terminated Morrissette's contract.

This Court's review of the cases involving corporate liability for the discriminatory animus of subordinates who influence a decisionmaker all involve subordinates employed by the corporate defendant. See, e.g. Cariglia, 363 F.3d 77 (involving an employee who alleged that his supervisor "orchestrated" his termination, based on ageist animus, even though the decision to terminate him

---

[5] See EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 487 (10th Cir. 2006) ("[T]he issue is whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action"); see also id. at 488 ("[B]ecause a plaintiff must demonstrate that the actions of the subordinate caused the employment action, an employer can avoid liability by conducting an independent investigation of the allegations against an employee."); but see Murray v. United Food & Comm. Workers Union, 100 Fed.Appx. 165, 176 (4th Cir. 2004) ("[A]n employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision.") (quoting Hill v. Lockheed Martin Logistics Management, Inc. 354 F.3d 277, 291 (4th Cir. 2004)).

was made by neutral decisionmakers). Kawa, however, is not a Honeywell employee, and it is undisputed that "[t]here is no relationship between Honeywell and Mr. Kawa." Sienkiewicz Dep. 24:9-10. This Court declines Morrissette's invitation to extend "cat's paw" liability where, as here, the "subordinate" is an employee of an entity with which the corporate defendant had an arms-length contractual relationship. The disconnect between the subordinate, Kawa, and the ultimate decisionmaker renders the "cat's paw" theory of liability inapplicable.

## IV. Conclusion

For the foregoing reasons, Honeywell's motion for summary judgment is GRANTED as to the RICRA age discrimination claim. The clerk is directed to enter judgment in favor of the Defendants.

SO ORDERED

/s/ Mary M. Lisi

Mary M. Lisi
United States District Judge
August 17, 2011